06-CV-05559-NTC



SEP 27 2006

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD LEE HOSKIN and BLANCHE JANE HOSKIN, a married couple,

Plaintiffs,

vs.

PIERCE COUNTY DEPUTY SHERIFF ROBERT LARSEN, personally and in his official capacity, et al.,

Defendants.

NO. C06-5559 RBL

NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants Pierce County Deputy Sheriff Robert Larsen, Pierce County Deputy Sheriff John Doe Myron, Pierce County Deputy Sheriffs John and Jane Does, and Pierce County Sheriff's Department, hereafter Defendants Pierce County, hereby removes to this Court the state court action described below.

1. On September 12, 2006, an action was commenced in the Superior Court of the State of Washington in and for the County of Pierce, entitled Donald Lee Hoskin and Blance Jane Hoskin v. Pierce County Deputy Sheriff Robert Larsen, et al., as cause number 06-2-11253-4 hereto attached as Exhibit A.

NOTICE OF REMOVAL - 1
Hoskin 6wNOR.doc

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main Office: (253) 798-6732
Fax: (253) 798-6713

2. The first date upon which Defendants Pierce County received a copy of the said complaint was September 15, 2006, when Defendants Pierce County were served with a copy of the said complaint and a summons from the said state court. A copy of the summons is attached hereto as Exhibit B.

3. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by Defendants Pierce County pursuant to the provisions of 28 U.S.C. §1441(b) in that it arises under 42 U.S.C. § 1983.

DATED this 27th day of September, 2006.

GERALD A. HORNE
Prosecuting Attorney

By /s/ Ronald J. Williams
RONALD L. WILLIAMS / WSB# 13927
Deputy Prosecuting Attorney
Attorneys for Defendants Pierce County
PH: 253-798-3612/FAX: 253-798-6713

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing NOTICE OF REMOVAL was delivered this 27 day of September, 2006, to ABC-Legal Messengers, Inc., with appropriate instruction to forward the same to counsel for Plaintiffs as follows:

David S. Vogel
Attorney at Law
821 Second Ave., Ste. 2200
Tacoma, WA 98104

CHRISTINA M. DUREN

NOTICE OF REMOVAL - 2
Hoskin 6wNOR.doc

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main Office: (253) 798-6732
Fax: (253) 798-6713

IN COUNTY CLERK'S OFFICE
A.M. SEP 1 2 2006 P.M.
PIERCE COUNTY, WASHINGTON
KEVIN STOCK, County Clerk
BY_____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

DONALD LEE HOSKIN and BLANCHE JANE HOSKIN, a married couple,

Plaintiffs,

v.

PIERCE COUNTY DEPUTY SHERIFF ROBERT LARSEN, personally and in his official capacity; PIERCE COUNTY DEPUTY SHERIFF JOHN DOE MYRON, personally and in his official capacity; PIERCE COUNTY DEPUTY SHERIFFS JOHN and JANE DOES; PIERCE COUNTY SHERIFF'S DEPARTMENT; WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICER DANA AGER, personally and in her official capacity; WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICER POLLY HOLTON, personally and in her official capacity; and WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICERS JOHN and JANE DOES, and WASHINGTON STATE DEPARTMENT OF CORRECTIONS,

Defendants.

NO. 06 2 11253 4

COMPLAINT FOR DAMAGES

## I. Nature of Suit

1.1  Introduction.  This is a civil action seeking damages against the above-named defendants. This civil action is brought under common law tort causes of action and pursuant to 42

COMPLAINT - 1

ORIGINAL   EXHIBIT NO. 

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

1   USC § 1983 for offenses committed under color of state law resulting in the deprivation of rights
2   secured by the Constitution and laws of the United States.

## II. Parties

2.1  <u>Plaintiffs</u>.  At all times material plaintiffs Donald L. Hoskin and Blanche ("Jane") Hoskin have been citizens of the United States and residents of Pierce County, Washington.

2.2  <u>Defendant Robert Larsen</u>.  At all times material defendant Robert Larsen was a Deputy of the Pierce County Sherriff's Department.  He is sued in his official capacity and personally.  All actions of defendant Larsen alleged herein were under color of state law.

2.3  <u>Defendant John Doe Myron</u>.  At all times material defendant Myron was a Deputy of the Pierce County Sheriff's Department.  He is sued in his official capacity and personally.  All actions of defendant Myron alleged herein were under color of state law.

2.4  <u>Defendants Deputy Sheriffs John and Jane Does</u>.  At all times material defendants John and Jane Does were Deputies of the Pierce County Sherriff's Department.  They are sued in their official capacity and personally.  All actions of defendants Deputy Sheriffs John and Jane Does alleged herein were under color of state law.

2.5  <u>Defendant Pierce County Sheriff's Department</u>.  At all times material hereto, defendants Robert Larson, John Doe Myron and Deputy Sheriffs John and Jane Does were employed by the Pierce County Sheriff's Department (PCSD).  All of the actions of these defendants alleged in this Complaint were committed during the course of and within the scope of their employment.

2.6  <u>Defendant Dana Ager</u>.  At all times material hereto, defendant Dana Ager was a Community Correction Officer (CCO) for the Washington State Department of Corrections.  She is sued in her official capacity and individually.  All actions of defendant Ager alleged herein were under color of state law.

2.7  <u>Defendant Polly Holton</u>.  At all times material hereto, defendant Polly Holton was a Community Correction Officer (CCO) for the Washington State Department of Corrections.  She is

COMPLAINT - 2

sued in her official capacity and individually. All actions of defendant Holton alleged herein were under color of state law.

2.8 <u>Defendants Community Corrections Officers John and Jane Does</u>. At all times material defendants John and Jane Does were CCOs for the Washington State Department of Corrections. They are sued in their official capacity and personally. All actions of defendants Community Corrections Officers John and Jane Does alleged herein were under color of state law.

2.9 <u>Defendant Washington State Department of Corrections</u>. At all times material hereto, defendants Dana Ager, Polly Holton and Community Corrections Officers John and Jane Does were employed by the Washington State Department of Corrections (DOC). All of the actions of these defendants alleged in this Complaint were committed during the course of and within the scope of their employment.

### III. Jurisdiction and Venue

3.1 <u>Jurisdiction.</u> The superior courts of the State of Washington have jurisdiction over the parties to and the subject-matter of this litigation.

3.2 <u>Venue.</u> This lawsuit and all claims herein involve events which occurred in Pierce County, Washington. All parties to this action are situated in Pierce County, Washington and/or reside or are employed therein.

3.3 <u>Claim for Damages</u>. With respect to plaintiffs' state law tort claims, plaintiffs filed claims for damages as required by state law. More than sixty days have elapsed since plaintiffs' respective claims were filed.

### IV. Facts

4.1 Plaintiffs Donald and Jane Hoskin live in a rural, wooded area of the Key Peninsula in Pierce County, Washington. Their driveway, including a circular loop, is about a quarter mile long and is clearly posted with "No Trespassing" signs. On January 22, 2004, at about 1:00 p.m., Jane Hoskin heard her dogs barking in the front side of the driveway, walked out to investigate, and saw a Pierce County Sheriff's Department car. She walked out to the car and was met by defendant

COMPLAINT - 3

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

Deputy Robert Larsen and a person who identified himself as CCO Jeff Bailey. CCO Bailey (who is not named as a defendant) asked Jane if her son, Corey Hoskin, who was under the supervision of the DOC at the time, was at plaintiffs' home. Plaintiffs' home was not listed with DOC as an approved residence for Corey. Jane told CCO Bailey that Corey did not live at their address and had not been there since May of 2003. (At the time of this incident, Corey Hoskin was residing in Hawaii.) Jane told Deputy Larsen and CCO Bailey that they needed to leave because they were trespassing.

4.2 A couple of minutes later plaintiff Donald Hoskin opened the door of plaintiffs' home and yelled to Jane that there was a car parked on the bridge, and a man was standing next to the car. Don asked Jane if she knew who it was. When Jane started to return to her home to speak with Don she was told to stop by Deputy Larsen, and was told that she could not return to her home.

4.3 Plaintiff Donald Hoskin went down the back side of their circular driveway, but when he got to the bridge there was nobody in or near the car parked there. While Don was walking to the bridge CCO Bailey asked Jane if they could look around. Jane told them that they would need a warrant, and she asked Bailey and Deputy Larsen to leave--they were trespassing. Jane asked if Larsen or Bailey had a warrant, and was told that they did not have one.

4.4 As Don was coming up the front of the circular driveway to talk to Jane he saw a man opening the door of plaintiffs' pump shed. He was removing 5 gallon buckets from the shed which had fish food stored in them. Don walked toward the shed and yelled for the man to get out. As Don approached the shed he heard a male voice yell from up the driveway, "You'd better come up here!" As Don approached the unidentified male voice he saw the man by the pump shed go back into the shed. Don once again yelled for the man to get out of the shed. When the man stepped away from the shed, Don walked back toward the voice, and saw the rear quarter of a green car.

4.5 At that time Jane yelled to Don that Pierce County Deputies and DOC were looking for Corey, but Don was unable to understand what she was saying. Meanwhile, several more law enforcement officers approached where Jane, Larsen and Bailey were. Don stopped yelling and

COMPLAINT - 4

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

walked toward Jane and the unidentified male voice. At that point Don recognized the green car as a Pierce County Sheriff's car. Don began speaking to Deputy Larsen for a couple of minutes when a young woman told Larsen, "He has a gun." Deputy Larsen asked Don if he had a gun and Don (who has a concealed weapons permit), said that he did, asking if there was a problem.

4.6  Deputy Larsen held his hand out toward plaintiff Don Hoskin and told Don to give him the gun. Don, who was concerned about the potential tragedy of a miscommunication, held his hands out and up from his sides, and said, "No, I don't want to touch my gun." He told Larsen that the gun was in his upper left shirt pocket and that Deputy Larsen could take the gun. Deputy Larsen removed Don's 25-caliber Beretta from Don's pocket. The gun had bullets in the clip but none in the chamber. Deputy Larsen took the safety off Don's gun and pulled back on the slide, allowing a bullet to enter the chamber. To prevent the gun from firing Deputy Larsen jammed a stick in the gun and then put it in his gun belt. At that point, after Deputy Larsen had taken possession of Don's gun, a female officer started screaming, "He's got a gun! He's got a gun!" Three additional Pierce County Sheriff's cars came racing down the Hoskins' driveway.

4.7  Deputy Larsen became agitated and yelled at Don that Don needed to "assume the position." Don, who did not understand, asked "What position?" Deputy Larsen grabbed Don, spun him around and slammed Don chest first against the Sheriff's car. Don asked what was going on, "You've got my gun." Deputy Larsen kicked out Don's ankles to spread his legs and told Don that he was going to pat him down. Don, who'd had a hip/back injury that made this position extremely painful, asked why -- Deputy Larsen had his gun and he hadn't done anything. Don told Deputy Larsen that he had a bad hip and couldn't spread his right leg out. Larsen yelled at Don, "We can do this the easy way or the hard way."

4.8  While Deputy Larsen was patting Don down additional officers came running up the driveway dressed in black with black face masks and assault rifles. Plaintiff Jane Hoskin approached Deputy Larsen and another person who was pointing a handgun at Don, and suggested they calm down, that things had gotten out of hand. Jane tried to tell Deputy Larsen that Don had a

COMPLAINT - 5

bad back/hip and he needed to get his balance. Deputy Larsen ignored Jane, kept kicking Don's ankles, then grabbed Don's left arm to bring it behind Don's back.

4.9  Don Hoskin asked what was going on, "Are you arresting me?" Deputy Larsen had Don's right arm and had pulled it behind Don's back, holding Don by both arms when Don said, "You guys have been watching too much T.V." At that point Deputy Larsen let go of Don's arms, grabbed Don by the hair, pulled him over backward and spun him face first onto the ground. Don did not resist, and briefly lost consciousness. The deputy who had his handgun pointed at Don jumped on top of Don, as did another deputy. Both deputies grabbed Don by the left arm, pulled it behind his back and put a handcuff on it. Don tried to put his right arm behind his back to avoid further confrontation. When the deputies cuffed Don's right wrist Deputy Larsen grabbed Don by the handcuffs and picked Don straight up off the ground by Don's wrists. Don tried to get his feet under himself to support his weight when Deputy Larsen let go of the handcuffs. Don slammed face first onto the hard dirt, striking the top of his head, then laid there motionless.

4.10  Two men picked Don up off the ground and stood him up. Three red laser dots from the assault rifles were trained on Don's chest and one was on his forehead. Another deputy had a taser aimed at Don. After a period of time the officers were instructed to stand down.

4.11  When plaintiff Jane Hoskin turned to one of the men dressed in black he held a handgun about six inches from her face. When Jane started toward Don to talk to him she was stopped by the man with the gun. Jane yelled that she was calling the Federal Marshalls, and attempted to go into her home to call, but she was stopped by two men and told she could not go in the mobile home without them. Jane asked if she were under arrest but received no answer. Jane asked if Don was under arrest. Jane was told no, that they had handcuffed Don for safety reasons. Deputy Larsen had placed Don in the back of a Sheriff's car.

4.12  When plaintiff Jane Hoskin tried to go into her home to call Federal Marshall for assistance she was told that she could not enter unless she was accompanied by deputies. Jane told

COMPLAINT - 6

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

the deputies they had no right to go into her home without a warrant. The deputies told Jane that they didn't need a warrant because they were there on a DOC operation.

4.13  CCO Dana Ager then arrived on the scene. Upon information and belief, CCO Ager had previously been instructed by Corey Hoskin's CCO, Dave Hilpert (who was not on duty at the time of this incident), that Ager was not to try to make contact with Corey Hoskin unless he (Dave Hilpert) was present. Dave Hilpert had a working relationship with the Hoskin family.

4.14  Deputy Larsen then walked Don up to where Jane was standing and told them both that Don was going to be arrested if they did not allow the deputies and CCOs to search their home. Don asked what he would be arrested for, because he hadn't done anything. Deputy Larsen told him he would be arrested for Obstructing. The deputies told the Hoskins that they knew Don was a Federal employee and would lose his job if he were arrested. Plaintiffs Don and Jane Hoskin refused to allow their home to be searched and asked to see a warrant for Corey Hoskin's arrest or a warrant to search the property. The deputies and defendant CCO Ager said that they didn't need a warrant because they were there on a DOC operation.

4.15  Deputy Larsen started to return Don to the sheriff car and told Don that he was being placed under arrest for "Interference in Governmental Affairs." As they walked Larsen told Don, "okay, now I'm going to read you your rights," and tugged Don by the handcuffs. Don yelled to Jane that he was being arrested.

4.16  At about that time plaintiff Jane Hoskin noticed defendant CCO Polly Holton. Upon information and belief, defendant CCO Holton had also been instructed by Corey Hoskin's CCO, Dave Hilpert, that she was not to try to make contact with Corey Hoskin unless he (Dave Hilpert) was present. Jane could hear CCO Holton telling the deputies that they needed to get into the Hoskins' home. CCO Holton told the deputies that she knew Corey was on the property because his white pickup was in the yard parked next to the green Sheriff's car. In fact, only minutes earlier, one of the female CCOs had told plaintiff Jane Hoskin's mother, Ann Chadwick, at Corey's approved DOC residence, that she knew Corey Hoskin was living in Hawaii. Don, who was still

COMPLAINT - 7

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

nearby, told the deputies that the white truck was not Corey's. Don told them they needed to check the legal owner. CCO Holton told the deputies that Jane Hoskin had lied to her numerous times about Corey and was always hiding him out. In fact, the only previous contact between Holton and Jane had been in March 2003 when Holton was stopped from searching the Hoskin's home without a warrant by a Pierce County deputy who understood the need for a search warrant.

4.17 Based on her understanding that Don, who has a Department of Defense secret security clearance, would lose his job if he were arrested, Jane told the deputies that they didn't need to arrest Don -- she allowed entry into her home under protest. Jane selected CCO Bailey and CCO Ager, who agreed to go into the home with her without a deputy accompanying them. After Jane and the CCOs entered her home Jane turned to close the door when she was forcefully pushed (on her breasts) out of the way by Deputy Myron, who forced his way into the bedroom, threw boxes around, and broke the leg of an antique piano bench.

4.18 After looking around the Hoskin's home, CCO Ager told CCO Bailey and Deputy Myron that Corey wasn't there, so they all went back outside and gave the "all clear".

4.19 After the warrantless search of the Hoskin's home, Jane was approached by CCO Holton, and Jane asked her why the CCOs were there—Corey didn't even live in the state, and hadn't since May 2003. CCO Holton told Jane that the Department of Corrections knew that Corey had left Washington in December 2003 to go to Hawaii. Defendant Holton told Jane that she knew that Corey had called Jane from Hawaii the night before. Jane asked CCO Holton where she had gotten all her information and CCO Holton replied, "the Federal Marshalls." Jane then asked CCO Holton why this whole incident had taken place if they knew Corey was in Hawaii. Holton responded that DOC felt that if they put pressure on Corey's parents and grandparents, especially on Jane, that Jane would make Corey return to Pierce County.

4.20 When Don had joined Jane, CCO Holton told them that they better get Corey back to Washington. CCO Holton said that Corey had two warrants out for his arrest, and that now he would have three. Jane asked CCO Holton to show her copies of the warrants, but Holton stated

COMPLAINT - 8

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

that she did not have them with her, and she did not have to show them to Jane. Holton stated that her whole group would be back again, and that next time it would be a lot worse.

## V. Proximate Cause and Damages

5.1  As a direct and proximate result of the acts and omissions of defendants alleged above, plaintiff Donald Hoskin has suffered traumatic physical injuries principally involving his head; loss of liberty; emotional distress and humiliation; wage loss and other damages to be proven at trial.

5.2  As a direct and proximate result of the acts and omissions of defendants alleged above, plaintiff Jane Hoskin has suffered emotional distress and humiliation, and other damages to be proven at trial.

## VI. Causes of Action

6.1  <u>First Cause of Action; Civil Rights</u>.  The use of unreasonable, excessive and reckless force by defendant Robert Larsen and other defendant Deputy Sheriffs, as alleged above, violated the rights of plaintiff Donald Hoskin under the Fourth Amendment to the United States Constitution to be free from the use of unreasonable and excessive force.  These defendants are liable in their official capacities and in their personal capacities pursuant to Title 42 U.S.C. § 1983.

6.2  <u>Second Cause of Action; Civil Rights</u>.  The unlawful arrest of plaintiff Donald Hoskin by defendant Robert Larsen and other defendant Deputy Sheriffs, as alleged above, violated the rights of plaintiff Donald Hoskin under the Fourth Amendment to the United States Constitution to be free from unlawful arrest.  These defendants are liable in their official capacities and in their personal capacities pursuant to Title 42 U.S.C. § 1983.

6.3.  <u>Third Cause of Action; Civil Rights.</u>  The warrantless and unlawful entry into plaintiffs' home, as alleged above, caused by all individual defendants, was in violation of the rights of plaintiffs Donald and Jane Hoskin under the Fourth Amendment to the United States Constitution to be free from unlawful searches.  These defendants are liable in their official capacities and in their personal capacities pursuant to Title 42 U.S.C. § 1983.

COMPLAINT - 9

6.4. <u>Fourth Cause of Action; Negligence.</u> Defendants Robert Larsen, and the Pierce County Sheriff's Department, under the doctrine of respondeat superior, are liable for the common law tort of negligence for injuries sustained by plaintiff Donald Hoskin when he was allowed to fall to the ground on his head, after his arms were placed behind his back and he was in the control and custody of Deputy Larsen. Defendant Larsen is liable in his official capacity and in his personal capacity.

6.5 <u>Fifth Cause of Action; Trespass.</u> All defendants are liable for the common law tort of trespass against plaintiffs Donald and Jane Hoskin, in their official capacities, in their personal capacities, and under the doctrine of respondeat superior, for refusing to leave the property of the Hoskins after they were requested to do so, and for entering into the Hoskins' home without lawful authority or valid consent to do so.

6.6 <u>Sixth Cause of Action; Negligent Infliction of Emotional Harm.</u> Defendants Robert Larsen, and the Pierce County Sheriff's Department, under the doctrine of respondeat superior, are liable for the common law tort of negligent infliction of emotional harm for injuries sustained by plaintiff Jane Hoskin for the emotional injuries she sustained when watching her husband fall to the ground on his head, after his arms were placed behind his back and he was in the control and custody of Deputy Larsen. Defendant Larsen is liable in his official capacity and in his personal capacity.

## VII. Request for Relief

7.1 Plaintiff requests the following relief:

a) For compensatory damages against all defendants in an amount to be proven at trial;

b) For punitive damages against defendants Larsen, Myron, Ager and Holton;

c) For reasonable attorney's fees and expenses pursuant to 42 USC §1988;

d) For attorney's fees and court costs;

e) For such other and further relief as this court deems just and proper.

COMPLAINT - 10

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

Dated this 7th day of September, 2006.

LAW OFFICES OF DAVID S. VOGEL

By: *[signature]*
David S. Vogel, WSBA 13672
Attorney for Plaintiff

COMPLAINT - 11

Law Offices of David S. Vogel, P.L.L.C.
Exchange Building, Suite 2200
821 Second Ave, Seattle, WA 98104
Ph: (206) 622-2573 · Fax: (206) 388-0742

06-2-11253-4   26124128   SM   09-12-06

FILED IN COUNTY CLERK'S OFFICE
A.M. SEP 1 2 2006 P.M.
PIERCE COUNTY, WASHINGTON
KEVIN STOCK, County Clerk
BY _____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

DONALD LEE HOSKIN and BLANCHE JANE HOSKIN, a married couple,

    Plaintiffs,

v.

PIERCE COUNTY DEPUTY SHERIFF ROBERT LARSEN, personally and in his official capacity; PIERCE COUNTY DEPUTY SHERIFF JOHN DOE MYRON, personally and in his official capacity; PIERCE COUNTY DEPUTY SHERIFFS JOHN and JANE DOES; PIERCE COUNTY SHERIFF'S DEPARTMENT; WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICER DANA AGER, personally and in her official capacity; WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICER POLLY HOLTON, personally and in her official capacity; and WASHINGTON STATE DEPARTMENT OF CORRECTIONS OFFICERS JOHN and JANE DOES, and WASHINGTON STATE DEPARTMENT OF CORRECTIONS,

    Defendants.

NO. 06 2 11253 4

SUMMONS

TO THE DEFENDANTS: A lawsuit has been started against you in the above-entitled court by the plaintiff named above. Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

SUMMONS - 1

EXHIBIT NO. B

ORIGINAL

Law Offices of David S. Vogel, P.L.L.C.
Exchange Bldg, Suite 2200
821 Second Ave, Seattle, WA 98104
(206) 622-2573 · dvogel@davidvogel.com

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what has been asked for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of any attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated this 7th day of August, 2006.

*David S. Vogel*

David S. Vogel, WSBA #13672
Attorney for Plaintiffs

SUMMONS - 2