Hon. Ronald B. Leighton

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD LEE HOSKIN and BLANCHE JANE HOSKIN, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE COUNTY DEPUTY SHERIFFS ROBERT LARSEN and ALLEN MYRON,<br><br>Defendants. | NO. C06-5559 RBL<br><br>TRIAL BRIEF |

## PLAINTIFFS' CONTENTIONS

Plaintiffs Donald and Jane Hoskin are the parents of Corey Hoskin, who was on DOC probation at the time of this incident. On January 22, 2004, at about 1:00 p.m., Jane Hoskin, awakened and saw a Pierce County Sheriff's car in her driveway. She walked out to the car and was met by defendant Larsen and CCO Jeff Bailey. They said they were looking for Corey. Jane told them that Corey was not there, that it wasn't his home, and that they were trespassing.

TRIAL BRIEF - 1

Minutes later plaintiff Donald Hoskin got out of bed, saw a car parked on the bridge of their driveway, and a man (DOC Ofc. Joedeer O'Neill) standing next to the car. Don, who has a concealed weapons permit, put a small Beretta automatic in his shirt pocket, and walked toward the car to investigate. Don went down the back side of their circular driveway, but when he got to the bridge there was nobody in or near the car parked there. Don continued the circle and walked up the other way in front of his house trailer. Don saw the man and hollered at him.

As Don approached the shed he heard a male voice yell from up the driveway, "You'd better come up here!" Don walked toward Jane and Deputy Larsen. Don began speaking to Deputy Larsen when DOC officer Polly Holton told Larsen, "He has a gun." Deputy Larsen removed the small gun from Don's pocket, and then attempted to handcuff Mr. Hoskin, swinging Don to the ground by the hair. After Don's hands were cuffed behind his back, Deputy Larsen picked him up by the handcuffs to about waist height and dropped Don onto the ground onto his face and forehead.

Jane asked if Don was under arrest, and was told no, that they had handcuffed Don for safety reasons. Deputy Larsen placed Don in the back of a Sheriff's car. Larsen told Don, "either you are going to cooperate or we are going to arrest you. Don begged Larsen not to arrest him because he has a security clearance and would lose his job.

The DOC and Pierce County officers asked to search the Hoskins' trailer to find Corey, but Jane insisted that she would not let them in without a warrant. Deputy Larsen walked Don up to where Jane was standing. A deputy asked if she was going to let them go in the house, and Jane told them no. Deputy Larsen turned Don around and said, I'm going to read you your rights, and started reading him his rights. At that point, Jane yelled for Larsen to stop. She told him that it was obvious the officers were going to arrest Don if Jane didn't let them in the house. Jane felt she had no choice because Don would lose his job. So she asked Deputy Larsen if she could choose two

TRIAL BRIEF - 2

people to go in the house with her. He said that was fine. Mrs. Hoskin agreed to allow CCO Bailey and CCO Ager to enter so that her husband would not be arrested, but she did not agree to allow a deputy to accompany them. After Jane and the CCOs entered her home, Jane turned to close the door when she was forcefully pushed (on her breasts) out of the way by Deputy Myron, who forced his way into her home.

## ISSUES AT TRIAL

1. Whether, under the facts and circumstances as proven at trial, defendant Robert Larsen's use of force against Donald Hoskin was excessive and/or unreasonable.

2. Whether, under the facts and circumstances as proven at trial, the warrantless entry into plaintiffs' home was authorized by valid consent, or whether the consent was coerced and the entry unlawful.

3. Whether, under the facts and circumstances as proven at trial, defendants' refusal to leave plaintiffs' property constituted trespass.

4. Whether, under the facts and circumstances as proven at trial, defendants' entry into plaintiffs' home constituted trespass.

## EVIDENTIARY ISSUE – Corey Hoskin DOC Records

**Relevance**

Defendents have indicated in the Pre-Trial Order that they intend to offer a number of Corey Hoskin's DOC records that the defendants had not seen prior to or during this incident. Because there is no legal issue in this case that Corey Hoskin's DOC records are relevant to, they should not be admitted.

The DOC records may indicate that DOC incorrectly presumed that Corey Hoskins resided with his parents. There is no indication in the records, however, that the Hoskins had ever agreed to allow Corey to reside with them. They would have had to surrender their guns if they had agreed to DOC supervision.

TRIAL BRIEF - 3

Because Corey Hoskins did not reside with his parents, and had never been registered at their address, the DOC records cannot support defendants' claim that they had a right to be on the Hoskins' premises at the time of this incident.

**Prejudice**

Neither Don nor Jane Hoskin has ever been arrested or convicted of a crime. Their estranged son, Corey, is a convicted felon. Mrs. Hoskin had previously been cooperative with law enforcement concerning her son's whereabouts, but he had never resided at the Hoskins' home. By introducing Corey's DOC records, Pierce County intends to paint the Hoskins with the sins of their son.

Because they are blood relatives, this information is especially prejudicial -- Like son, like parent. Pierce County should explain why this prejudicial information serves any purpose, because it has no evidentiary value.

## REMAINING DEFENDANTS

Plaintiffs have eliminated all but the two remaining defendants Robert Larsen and Allen Myron. Plaintiffs understand that a DOC search, even under the best conditions, is very difficult and hazardous. In this case, however, defendant Robert Larsen stepped over the line when he intentionally injured Don Hoskin.

Neither of these defendant deputies would argue that coerced consent for a search is valid. Both Allen Myron and Robert Larsen knew that Mrs. Hoskin did not want to allow them in her house. Robert Larsen coerced her consent by threatening to arrest her husband, and then Allen Myron shoved his way into the Hoskins' home, without permission.

For these reasons plaintiffs seek compensatory and punitive damages.

TRIAL BRIEF - 4

1   Dated this 7th day of May, 2008.

2                                   LAW OFFICES OF DAVID S. VOGEL, P.L.L.C.

3

4                           By: _____
                                   David S. Vogel, WSBA 13672
5                                  Attorney for Plaintiffs

TRIAL BRIEF - 5